IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

TONI C. BLUEL,                                    )
                                                 )
                                      Plaintiff, )
                                                 )
             vs.                                 )
                                                 )
BERT L. COTTLE, in his official capacity,        )
as City of Wasilla Mayor; et al.,                )
                                                 )        No. 3:17-cv-0116-HRH
                                     Defendants. )
_____  )

<u>O R D E R</u>

<u>Motion for Summary Judgment</u>

Defendants move for summary judgment on plaintiff's remaining claims.[1]  This

motion is opposed.[2]  Oral argument was not requested and is not deemed necessary.

<u>Facts</u>

Plaintiff is Toni C. Bluel.  Defendants are Bert L. Cottle, the City of Wasilla Mayor;

Archie Giddings, the Public Works Director for the City of Wasilla; and the City of Wasilla.

Cottle and Giddings are sued in both their official and individual capacities.[3]

_____

[1]Docket No. 43.

[2]Docket No. 46.

[3]Although in the caption of her complaint, plaintiff indicates that she is only suing
(continued...)

Plaintiff worked as a finance clerk[4] for the City of Wasilla in the Public Works Department from February 2008 until June 2016. During the time period of 2012-2014, plaintiff felt that she was being subjected to a hostile work environment and filed complaints with the EEOC and the Alaska State Commission for Human Rights (ASCHR). Those complaints are not the subject of this lawsuit. Plaintiff avers that "[b]y 2015, . . . I no longer had claims filed with the human rights commission[.]"[5]

But, plaintiff continued to feel as though she was being subjected to unequal treatment in the workplace. On July 17, 2015, Giddings gave plaintiff and three other Public Works employees a memo that "establish[ed] the priorities of the office."[6] The memo stated that "[t]he number one priority is customer service and number two is utility billing. All other priorities are secondary."[7]

Plaintiff found the staffing memo

> very disturbing . . . as I perceived it as de-valuing my contribu-
> tion and exalting [another employee's] contribution, as the

---

[3](...continued)
Cottle and Giddings in their official capacities, in other places in her complaint she alleges that she is suing them in their individual capacities as well. Complaint for Damages at 6, ¶¶ 3.6-3.7; 8, ¶¶ 1-2, Docket No. 1.

[4]Employee Status/Payroll Change Form, Exhibit 1 at 2, Defendants' Motion for Summary Judgment, Docket No. 43.

[5]Affidavit of Toni Bluel [etc.] at 2, ¶ 4, Docket No. 48.

[6]Exhibit 1 at 15, Defendants' Motion for Summary Judgment, Docket No. 43.

[7]<u>Id.</u>

> memo stated the goal of the staffing memo was to allow billing
> to be completed without interruption. . . .  I felt it was demean-
> ing and belittling and that was extremely upsetting to me, and
> incited fear that my duties were going to be permanently
> reassigned.[8]

Plaintiff was asked to initial the memo and she did so on July 21, 2015 "under extreme stress."[9]

On August 31, 2015, in an email to Lisa Garbo, the Director of Human Resources, plaintiff stated that she "didn't need a belittling memo telling me that my contribution is secondary.  I said that if I initialed the memo it meant I accepted being a less valuable employee, and if I didn't initial and perform as it states, I am insubordinate."[10]  Plaintiff reiterated that she found the memo "very upsetting."[11]

On December 15, 2015, plaintiff requested that the July 17, 2015 memo be removed from her personnel file.[12]  Plaintiff stated that she felt the memo and the policy it imple-mented was "an effort to retaliate against me for my EEOC sexual harassment complaint by oppressing me, by not allowing me to develop my skills and knowledge and by not giving

---

[8]Email from Bluel to Faeo, Garbo and Giddings, Exhibit 1 at 8, Defendants' Motion for Summary Judgment, Docket No. 43.

[9]Duties of Public Work Office Memo, Exhibit 1 at 15, Defendants' Motion for Summary Judgment, Docket No. 43.

[10]Exhibit 1 at 16, Defendants' Motion for Summary Judgment, Docket No. 43.

[11]Id.

[12]Exhibit 1 at 13-14, Defendants' Motion for Summary Judgment, Docket No. 43.

me credit for my accomplishments."[13]  Plaintiff stated that "[t]he memo policy is hostile and offensive and re-affirms that my Director is completely disengaged and non-attentive to his office staff and office procedures and office environment, or that he is engaged but only in a retaliatory way."[14]

On January 6, 2016, plaintiff sent a memo to Garbo that she requested be put in her personnel file along with documents that were attached to the memo.[15]  The attached documents included emails to and from Giddings about subjects such as the July 17, 2015 staffing memo, an incident when someone entered plaintiff's cubicle and defaced her personal property, and a "favorable re-hire statement."[16]  The memo also included a list of "inappropriate things [that] have occurred" over the past year, including such as someone putting Vitamin D on her desk as a gift from Santa, her personal property in her cubicle being defaced, another employee yelling at her, being coerced into signing the July 17, 2015 staffing memo, having her duties designated as secondary, having a request to work a flex schedule ignored, and Giddings' alleged violation of an administrative policy.[17]

Plaintiff avers that Giddings did nothing about her complaints and so, in January 2016,

---

[13]Id. at 14.

[14]Id.

[15]Exhibit 1 at 11-12, Defendants' Motion for Summary Judgment, Docket No. 43.

[16]Id. at 11.

[17]Id. at 12.

she requested a meeting with Garbo.[18]  This meeting took place on January 13, 2016 and was attended by plaintiff, Garbo, and Giddings.  Plaintiff avers that during the meeting she "shared with Ms. Garbo that it would be best if Giddings responded proactive[ly] with his managerial style, and that if he did the City would be more productive and I would feel better about the working environment."[19]  Plaintiff avers that she also "shared her ideas and goals for the upcoming year, on ways I thought that Wasilla could improve efficiency and establish a forward thinking community vision."[20]  Plaintiff avers that Giddings "stated that he intended to maintain the 'status quo.'"[21]

After the January 13, 2016 meeting, Donna Faeo, a Human Resources employee, discussed with Cottle the potential of referring plaintiff for mental health counseling.[22]  Faeo "then made a contact with the Magellan Clinical Manager . . . and explained the situation. She thinks a mandatory referral is warranted at this point."[23]  Faeo prepared a draft of a memo for such a referral and sent it to Giddings for review.[24]  Faeo advised Giddings that

---

[18]Bluel Affidavit at 2, ¶ 8, Docket No. 48.

[19]Id. at 3, ¶ 9.

[20]Id.

[21]Id.

[22]Exhibit A at 3, Plaintiff's Opposition to Motion for Summary Judgment, Docket No. 46.

[23]Id.

[24]Id.

it was her intention to give plaintiff the referral memo on the morning of January 15, 2016.[25]

On January 15, 2016, Giddings gave plaintiff the referral memo which read, in pertinent part:

> I have worked with you for over seven years' time and have known you to be a capable and dedicated employee. However, in the past several months there have been concerns about your ability to be able to continue your work day either resulting in your need to immediately take leave for the day and or periods of time.[[26]]

> At your request, several meetings have taken place with me and the Human Resources Department and we have exhausted our efforts to be able to offer any assistance to alleviate the concerns you feel are causing you angst within your department and with your co-workers.

> * * *

> The City is mandating you to seek assistance from Magellan Health[,] our Employee Assistance Program (EAP).[[27]]

Plaintiff was given until 4 p.m. that afternoon to schedule an appointment and directed to let Faeo know once she had done so.[28]  Plaintiff's initial response to the memo, which was dated January 15, 2016 and written on the face of the memo, was that it was "an attempt for the city

---

[25]Id.

[26]For example, one day plaintiff "left the office for 1 hour and went for a drive to Walmart" because she was upset.  Email from Bluel to Faeo, Garbo, and Giddings, Exhibit 1 at 8, Defendants' Motion for Summary Judgment, Docket No. 43.

[27]Memo re Referral to Employee Assistance Program, Exhibit 2 at 1, Defendants' Motion for Summary Judgment, Docket No. 43.

[28]Id.

to cover it's [sic] behind in any potential legal situation, and a strategy to progressively discipline and discredit me. Angst is created by inequitable treatment and hostility."[29]

Nonetheless, plaintiff contacted Magellan and scheduled an appointment for 6:30 p.m. on January 18, 2016.[30] But, then she avers that she "decided that I would not submit to Giddings['] demands, deciding that I would suffer whatever consequences resulted by my decision to object to being label[ed] mentally unstable and being subjected to counseling when I had been fully performing my job duties."[31]

On January 18, 2016, plaintiff told Giddings that she was not going to comply with the mandate for counseling and asked him if she would be fired as a result.[32] Giddings told plaintiff he did not think she would be fired and she "said to him that I would just take the hit, whatever they decide[]."[33] Plaintiff noted that her fear was "that I will be set up with some issue, i.e., drugs planted on me or something, so they can fire me. I fear for my personal safety!"[34]

On January 19, 2016, plaintiff was given an oral warning for failure to comply with

_____

[29]Id.

[30]Exhibit A at 6, Plaintiff's Opposition to Motion for Summary Judgment, Docket No. 46.

[31]Bluel Affidavit at 4, ¶ 13, Docket No. 48.

[32]Exhibit 2 at 3, Defendants' Motion for Summary Judgment, Docket No. 43.

[33]Id.

[34]Id.

the mandate for counseling.[35]  Plaintiff was given until 4 p.m. that day to reschedule her

appointment.[36]  Plaintiff signed the oral warning form, under protest, noting that

> [t]his is an attempt to discredit me and label me and slap a
> diagnosis on me to prevent or prohibit me from saying deroga-
> tory statements in a legal setting, or otherwise, and to protect the
> City in a legal action created by my Director's lack of manage-
> rial skills and his disinterest and disconnect from his support
> staff.[[37]]

Plaintiff indicated that she would submit a further response by January 26, 2016.[38]  However,

later that day, at 1:20 p.m., plaintiff emailed Giddings to say "[p]lease never-mind about a

response from me about the mandated counseling.  It wouldn't matter anyway because I think

everyone's minds are made up already.  Please proceed with any action you choose to take

regarding further discipline."[39]  But, then, later on that day, Garbo emailed Faeo, Giddings

and Cottle to advise them that plaintiff had made contact with Magellan and they were

working on scheduling an appointment for her.[40]

     But, the next day, on January 20, 2016, plaintiff emailed Garbo, Faeo, and Giddings

---

[35]Disciplinary Action Form - A Warnings: Oral and Written, Exhibit 2 at 2, Defendants' Motion for Summary Judgment, Docket No. 43.

[36]Id.

[37]Id.

[38]Id.

[39]Exhibit 1 at 10, Defendants' Motion for Summary Judgment, Docket No. 43.

[40]Exhibit A at 9, Plaintiff's Opposition to Motion for Summary Judgment, Docket No. 46.

to advise them that she was not going "to comply with your mandate for counseling. I don't see the benefit of re-living horrible events and circumstances when I am on the road to recovery[.]"[41] Plaintiff also sent an email response to the oral warning in which she stated that "I sincerely believe that this mandate for counseling is in retaliation for statements I made in the Human Resources office during a brief meeting on January 6, 2016, when I requested documentation be placed in my personnel file."[42] Plaintiff stated that "[d]uring that meeting, I told Donna Faeo and Lisa Garbo that I would not defend the city in a legal matter, if in fact there occurs a legal matter regarding billing."[43]

In response, the City gave plaintiff "another opportunity to schedule an appointment with the available counselor before going down the path to address your refusal to comply with the mandatory referral. . . ."[44] Plaintiff was given until 1:00 p.m. on January 25, 2016 to schedule an appointment with Magellan.[45] Plaintiff responded: "No. Thank you. I'll take the discipline. Whatever that may be."[46]

---

[41]Exhibit A at 10-11, Plaintiff's Opposition to Motion for Summary Judgment, Docket No. 46.

[42]Exhibit 1 at 7, Defendants' Motion for Summary Judgment, Docket No. 43.

[43]Id.

[44]Email from Faeo to Bluel, Exhibit A at 10, Plaintiff's Opposition to Motion for Summary Judgment, Docket No. 46.

[45]Id.

[46]Email from Bluel to Faeo and Giddings, Exhibit A at 10, Plaintiff's Opposition to
(continued...)

On January 21, 2016, plaintiff submitted a letter of resignation, stating that her last day would be February 12, 2016.[47]  Plaintiff also emailed an "Addendum" to her response to the oral warning to Faeo, Garbo, and Giddings.[48]  Plaintiff wrote:

> I asked Donna why I have never been offered counseling at the City of Wasilla.  I don't mean counseling in the sense that I speak to a MFCC or LCSW or other type of professional counselor.  I meant why no one at the city has ever asked to speak to me about my behavior.  This was a question I had because Donna said that she had hit a "brick wall" with me.  It seems curious because she has never asked to speak to me about my behavior at all.  I told Archie that no one, ever, has spoken to me about my grievance or my complaint of sexual harassment or retaliation for making a complaint of sexual harassment.  No one has ever asked me my side of it or interviewed me about those situations.[[49]]

On January 25, 2016, plaintiff emailed an "Addendum #2" to her response to the oral warning to Faeo, Garbo, and Giddings, in which she wrote:

> I have observed many, many times inappropriate behaviors displayed by public works office staff, ie tardies, absences, lengthy personal phone calls, lengthy non-work related conver-sations, etc.
>
> Yet, it seems to me that no one called anyone to task about these

---

[46](...continued)
Motion for Summary Judgment, Docket No. 46.

[47]Exhibit A at 14, Plaintiff's Opposition to Motion for Summary Judgment, Docket No. 46.

[48]Exhibit A at 12,  Plaintiff's Opposition to Motion for Summary Judgment, Docket No. 46.

[49]Id.

behaviors until very recently, and I suspect my co-workers were
not referred to mandatory counseling like I was.
This is what makes the mandate to counseling so bizarre to me.
I feel singled out and for nefarious purposes.

I have had my duties removed from my purview . . . and have
suspected that this removal of duties was a step to abolish my
position or otherwise punish me for making a complaint about
the Deputy Director of Public Works.  I feel also that mandating
me to counseling is unfair because there have been numerous
instances where my office mates and co-workers have been
unavailable for customer service, via absences, tardies, and
engaged in long conversations.

I feel and always will feel that this action (mandating me to
counseling) is discriminatory and unfair and is a step to remov-
ing me from my job.  It is not for my benefit whatsoever.  Many
things have improved in Public Works except for long personal
phone calls by one co-worker in particular.  Since this co-worker
is a long term employee, I feel she is afforded special treatment
because she is allowed to be unavailable to address office
customers and other employees.[50]

On January 25, 2016, the City gave plaintiff her first written warning for failure to

comply with the mandate for counseling, which plaintiff signed "under protest."[51]  In the

warning, plaintiff was given until January 27, 2016 at 5 p.m. to comply with the mandate for

counseling.[52]

---

[50]Exhibit 2 at 4, Defendants' Motion for Summary Judgment, Docket No. 43.

[51]Disciplinary Action Form - A Warnings: Oral and Written, Exhibit A at 16,
Plaintiff's Opposition to Motion for Summary Judgment, Docket No. 46.

[52]Id.

On January 26, 2016, Giddings noted that he spoke

> with [plaintiff] a few minutes after 8 am this morning, and her
> question is[:] "what would the city do if she did not show up to
> work anymore". I told her I did not know how the city would
> respond. She sounded upset, she felt she could not face her co-
> workers as the city has humiliated her and she feels the city has
> an ulterior motive in mandating counseling. She said the city is
> leaving her broke and homeless with its actions.[53]

On January 27, 2016, plaintiff emailed Faeo, Garbo, and Giddings and stated that her

> religious beliefs dictate that I decline to attend the mandated
> counseling because . . . I sincerely believe that the mandate is
> only given in order for the city to label me as inadequately
> equipped so that the city can defend itself against wrong-doing
> and irresponsible behaviors and acts if, and/or when, a legal
> dispute or litigation occurs against the city.[54]

On January 28, 2016, plaintiff was given a "notice of suspension without pay for two

(2) days from January 28-29, 2016[,]" which she signed "under protest."[55] The notice

advised plaintiff that she had "until February 1, 2016 at noon to make contact with Magellan

Health and schedule an appointment by February 3, 2016."[56] The notice also advised

---

[53]Exhibit A at 17, Plaintiff's Opposition to Motion for Summary Judgment, Docket No. 46.

[54]Exhibit 2 at 5, Defendants' Motion for Summary Judgment, Docket No. 43.

[55]Disciplinary Action Form B - Suspension without Pay, Demotion or Dismissal, Exhibit 1 at 4, Defendants' Motion for Summary Judgment, Docket No. 43.

[56]Id.

plaintiff that she had until February 4, 2016 to request a hearing.[57]

On February 1, 2016, plaintiff requested that she be allowed to withdraw her resignation, stating "I don't really want to quit."[58] Plaintiff also requested to meet with Cottle and Giddings.[59] In her declaration submitted in opposition to the instant motion, plaintiff avers that she withdrew her resignation because she "discover[ed] violations of my rights under City code[.]"[60]

On February 2, 2016, plaintiff met with Cottle and Giddings. As a result of that meeting, Cottle revoked plaintiff's two-day suspension without pay, plaintiff was no longer mandated to get counseling, and plaintiff was allowed to withdraw her resignation.[61] After the meeting, plaintiff submitted a list of other actions that she wanted taken, including removal of all disciplinary forms and the letter mandating counseling from her personnel file, to not be disciplined for "nominal errors," and "[e]quitable and fair treatment."[62]

---

[57]Id.

[58]Exhibit A at 21, Plaintiff's Opposition to Motion for Summary Judgment, Docket No. 46.

[59]Exhibit A at 23, Plaintiff's Opposition to Motion for Summary Judgment, Docket No. 46.

[60]Bluel Affidavit at 5, ¶ 20, Docket No. 48.

[61]Exhibit 1 at 3, Defendants' Motion for Summary Judgment, Docket No. 43.

[62]Exhibit 2 at 6-7, Defendants' Motion for Summary Judgment, Docket No. 43.

On February 3, 2016, plaintiff requested a copy of the tape recording of the February 2, 2016 meeting, but she was told by Cottle that there was no tape recording of the meeting.[63] Also on February 3, 2016, plaintiff emailed Cottle to "request a pre-disciplinary hearing regarding the suspension-without-pay disciplinary action intended and imposed[.]"[64] In response, Cottle told her that "there would be no pre-disciplinary hearing - that I received a full paycheck and that there was no discipline and that the matter was closed."[65] Plaintiff noted that Cottle "seemed angry" that she was asking about this.[66] Plaintiff further noted that Giddings told her that "the mandate to counseling and the disciplinary forms would be 'nullified' by a memo which will be put in my file."[67] Plaintiff

> requested from Archie that I receive a written statement that the mandate and the disciplinary forms are nullified. I told Archie that the entire mandate and disciplinary action were "railroading me" and that I knew exactly why the city was "railroading me." I told Archie I need to be left alone and that I would take no action unless I am further messed with.[[68]]

On February 8, 2016, Giddings gave plaintiff a memo "with a summation" of the

---

[63]Exhibit A at 30, Plaintiff's Opposition to Motion for Summary Judgment, Docket No. 46.

[64]Exhibit A at 31, Plaintiff's Opposition to Motion for Summary Judgment, Docket No. 46.

[65]Id.

[66]Id.

[67]Id.

[68]Id. at 32.

actions that had been taken as a result of the February 2, 2016 meeting.[69]  In the memo, Giddings noted that "[t]he City made numerous requests in an attempt to have you seek counseling to resolve your work related issues and your refusal to follow these directives resulted in progressive discipline."[70]  Giddings further noted that Cottle had revoked the two-day suspension without pay, that counseling was no longer mandated, and that both he and Cottle had recommended approval of plaintiff's withdrawal of her resignation.[71]

On May 2, 2016, plaintiff submitted a written request to have the Public Works staffing memo and "the mandate to counseling and associated progressive disciplinary documentation be removed from all City of Wasilla files including my personnel file and supervisory files."[72]  Plaintiff avers that she made this request "to negate in absolute terms the harm that the City had done to my reputation by mandating that I undergo counseling."[73]

On May 3, 2016, Giddings responded:

> Per Wasilla Municipal Code, § 3.75.030, disciplinary actions will be documented on a discipline action form and will be maintained in the employee's personnel file.
>
> The staffing memo of July 17, 2015 was to notify clerical staff

---

[69]Exhibit A at 33, Plaintiff's Opposition to Motion for Summary Judgment, Docket No. 46.

[70]Id.

[71]Id.

[72]Exhibit 2 at 9, Defendants' Motion for Summary Judgment, Docket No. 43.

[73]Bluel Affidavit at 7, ¶ 25, Docket No. 48.

in the department that during billing cycle times the staff would be required to share duties on a rotating basis by answering the phones and providing customer service at the front counter to our clients.

Your request to have these referenced documents removed has been reviewed by me, Human Resources, and the Mayor, and [they] will stay as permanent documentation in your personnel file.[74]

On May 5, 2016, plaintiff submitted a copy of an "informal grievance" against Faeo that she had prepared in February but never filed and asked that it be put in her personnel file "as a means of documenting the code violation(s) committed by Donna Faeo."[75]  In the "informal grievance", plaintiff accused Faeo of "'railroading' [her] in an effort to discredit me and/or terminate my employment and effectively destroy my livelihood and my future."[76] Plaintiff stated that she believed that the mandate for counseling was "an attempt to minimize Donna Faeo's responsibility in my federal EEOC complaint and any future federal litigation."[77]  Plaintiff further stated that Faeo had "violated my rights and entitlement under the City of Wasilla code by not affording me the opportunity to access the pre-disciplinary

---

[74]Exhibit A at 35, Plaintiff's Opposition to Motion for Summary Judgment, Docket No. 46.

[75]Exhibit 2 at 10, Defendants' Motion for Summary Judgment, Docket No. 43.

[76]Id.

[77]Id. at 11.

hearing process before imposing suspension-without-pay disciplinary action."[78]  Plaintiff stated that she was not given an opportunity for a pre-disciplinary hearing but rather "was suspended-without-pay immediately upon receiving [the] 'notice of suspension-without-pay.'"[79]  Plaintiff also took issue with Faeo's statement that the mandate for counseling was for her benefit, stating that "I was mandated to counseling for objecting that my duties were deemed secondary to the duties of my peers."[80]  Finally, plaintiff accused Faeo of violating city code in "July, 2014, when [she] received a request from the AK Human Rights Commission for a copy of my personnel file."[81]  Plaintiff stated that the city code "states that I was to receive a copy of the AKHRC's request for a copy of my personnel file within 5 days" but that she did not receive a copy until 14 days after the request was received by the City.[82]

On June 14, 2016, Cottle and Giddings gave plaintiff a "directional memo."[83] The memo was "about management's expectations concerning professional behavior and

---

[78]Id.

[79]Id. at 12.

[80]Id. at 11.

[81]Id. at 12.

[82]Id.

[83]Exhibit A at 40, Plaintiff's Opposition to Motion for Summary Judgment, Docket No. 46.

communications in the workplace" and was "not disciplinary."[84]  The memo addressed tape

recording staff or departmental meetings, personal discussions in a group setting, unplanned

leave, using work time to address personal issues, the confidentiality of personnel issues,

requests for meetings, and making work calls outside of business hours.[85]  Plaintiff avers that

this memo "completed the erosion of the work environment that began with the mandated

counseling directives back in January 2016."[86]

   On June 15, 2016, plaintiff submitted a letter of resignation to Giddings, which

Giddings accepted on June 16, 2016.[87]  Plaintiff's resignation became effective on July 1,

2016.[88]  Plaintiff avers that she resigned because

> I could no longer tolerate being treated in a hostile and demean-
> ing manner.  The harm that I suffered caused by my discipline
> in January 2016 destroyed the working relationship I had with
> my co-workers and my supervisors.  I had made significant
> efforts to convince the City to correct the harm it caused me and
> this did not occur because the mandate for counseling remained
> in my personnel file and my co-workers still remembered that I
> had been mandated to attend counseling.[[89]]

---

[84]Id.

[85]Id. at 40-43.

[86]Bluel Affidavit at 7, ¶ 26, Docket No. 48.

[87]Exhibit 1 at 1, Defendants' Motion for Summary Judgment, Docket No. 43.

[88]Employee Status/Payroll Change Form, Exhibit 1 at 2, Defendants' Motion for
Summary Judgment, Docket No. 43.

[89]Bluel Affidavit at 7-8, ¶ 27, Docket No. 48.

On June 22, 2016, plaintiff was given her annual performance review[90] even though she had just recently resigned. Plaintiff's overall performance rating was 3.875, which was between meets requirements and exceeds requirements.[91] Giddings wrote that

> Toni continues to be a steady and reliable employee and she has a solid knowledge of the City's financial system as it relates to her job duties. Toni continues to improve in her ability to recognize problems with purchase orders, vendor invoicing, and budgeting, being able to bring relevant issues to her supervisor. Toni is also an asset with her ability to perform a variety of non-accounting public works programs. Toni was a real asset recently when we were down to 2 administrative staff (normally 4 staff present) for a month to cover the phones and public counter while continuing to complete her accounting duties.[[92]]

Plaintiff commenced this lawsuit on May 19, 2017. In her complaint, plaintiff asserts a single § 1983 cause of action. Plaintiff alleges that she was retaliated against for exercising her First Amendment right of free speech, that she was constructively discharged, and that her due process rights were violated. To the extent that plaintiff pled § 1983 sexual harassment and retaliation claims based solely on the events that occurred in 2012, those claims have been dismissed with prejudice.[93] Plaintiff requests compensatory damages and equitable relief in the form of "returning her to her former position with retroactive pay,

---

[90]Exhibit A at 44, Plaintiff's Opposition to Motion for Summary Judgment, Docket No. 46.

[91]Id. at 47.

[92]Id.

[93]Order re Motion for Partial Summary Judgment at 10, Docket No. 34.

return of seniority, and return of loss of benefits[.]"[94]

Defendants now move for summary judgment on plaintiff's remaining § 1983 free speech, due process, and constructive discharge claims.

<u>Discussion</u>

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. <u>Id.</u> at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." <u>T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 631 (9th Cir. 1987).

Section 1983 provides that "[e]very person who, under color of [law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

---

[94]Complaint for Damages at 8, ¶¶ 1-3, Docket No. 1.

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . ." 42 U.S.C. § 1983. "§ 1983 applies to municipalities and other local government units[.]" Hopper v. City of Pasco, 241 F.3d 1067, 1082 (9th Cir. 2001). "[A] suit against public employees in their official capacities is equivalent to a claim against their municipal employer." Santos v. County of Los Angeles Dep't of Children and Family Srvcs., 299 F. Supp. 2d 1070, 1078 (C.D. Cal. 2004). Generally, "[t]o state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). "A municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents, however." Id. "Instead, it is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible." Id. "A policy is 'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" Id. (quoting Fairley v. Luman, 281 F.3d 913, 918 (9th Cir. 2002)). Defendants first move for summary judgment on plaintiff's § 1983 free speech retaliation claim.

A First Amendment retaliation claim against a government employer involves

"a sequential five-step series of questions: (1)

-21-

> whether the plaintiff spoke on a matter of public
> concern; (2) whether the plaintiff spoke as a
> private citizen or public employee; (3) whether
> the plaintiff's protected speech was a substantial
> or motivating factor in the adverse employment
> action; (4) whether the [employer] had an ade-
> quate justification for treating the employee
> differently from other members of the general
> public; and (5) whether the [employer] would
> have taken the adverse employment action even
> absent the protected speech."

Desrochers v. City of San Bernardino, 572 F.3d 703, 708–09 (9th Cir. 2009) (quoting Eng

v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009)).  Defendants argue that plaintiff's First

Amendment claim fails at the first step.

> In order for a public employee's speech to be 'protected' under
> the First Amendment within the meaning of step one . . . , (1)
> the speech must involve a matter of public concern and (2) the
> employee's interest in expressing [herself] must outweigh the
> State's interests in promoting workplace efficiency and avoiding
> workplace disruption.

Brewster v. Board of Educ. of Lynwood Unified School Dist., 149 F.3d 971, 978 (9th Cir.

1998).  While the Ninth Circuit  has "'not articulated a precise definition of "public

concern,"'" Allen v. Scribner, 812 F.2d 426, 430 (9th Cir. 1987), "[i]t is clear . . . that the

essential question is whether the speech addressed matters of 'public' as opposed to

'personal' interest." Desrochers, 572 F.3d at 709.  "'[This] inquiry is purely a question of

law[.]'" Id. (quoting Eng, 552 F.3d at 1070).  The plaintiff "bears the burden of showing that

[her] speech addressed an issue of public concern, based on the content, form, and context

of a given statement, as revealed by the whole record[.]" Id. (internal citations omitted).

The content of the speech in question is the "greatest single factor" in determining whether the speech addressed an issue of public concern. Id. at 710 (citation omitted). "To address a matter of public concern, the content of [plaintiff's] speech must involve issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." Id. (citation omitted). "[S]peech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of 'public concern.'" Id. (citation omitted). "The same is true of 'speech that relates to internal power struggles within the workplace,' and speech which is of no interest 'beyond the employee's bureaucratic niche.'" Id. (quoting Tucker v. Cal. Dep't of Educ., 97 F.3d 1204, 1210 (9th Cir. 1996)).

The speech for which plaintiff contends she was retaliated against has been somewhat of a moving target. In her complaint, plaintiff alleges that she was retaliated against for complaining about a hostile work environment and "unequal treatment."[95] At her deposition, plaintiff was asked what she meant by her allegation that defendants had violated her free speech rights, and she answered:

> By not allowing me to protect myself and place items in my personnel file to protect myself. What I was wanting to do was put atta-girls in my file, compliments from coworkers and supervisors in . . . an attempt to protect myself because I knew and felt certain that the City . . . if I had stayed at work and not

---

[95]Complaint for Damages at 3, ¶ 2.8, Docket No. 1.

resigned the City was going to try to mandate me to counseling again. And this time they were going to make sure that they followed all the procedures appropriately so that they could terminate me.[96]

Plaintiff agreed that these "were her personal concerns about how things were proceeding with [her] complaints[.]"[97] And, now in response to the instant motion, plaintiff contends that the decision to mandate counseling occurred in retaliation for the comments she made during the January 13, 2016 meeting with Garbo and Giddings. Plaintiff avers that during the meeting she "shared with Ms. Garbo that it would be best if Giddings responded proactive[ly] with his managerial style, and that if he did the City would be more productive and I would feel better about the working environment."[98] Plaintiff avers that she also "shared her ideas and goals for the upcoming year, on ways I thought that Wasilla could improve efficiency and establish a forward thinking community vision."[99]

Plaintiff argues that the comments she made during the January 13, 2016 meeting are sufficient to create genuine issues of material fact as to whether the speech at issue here involved a matter of public concern. But whether the speech at issue involved a matter of public concern is a question of law for the court to decide. Karl v. City of Mountlake

---

[96]Deposition of Toni C. Bluel at 83:15-84:6, Exhibit 3, Defendants' Motion for Summary Judgment, Docket No. 43.

[97]Id. at 84:17-20.

[98]Bluel Affidavit at 3, ¶ 9, Docket No. 48.

[99]Id.

Terrace, 678 F.3d 1062, 1069 (9th Cir. 2012). It is not a factual question.

When the record as a whole is considered here, the court concludes that plaintiff's speech did not address matters of public concern. Plaintiff was primarily complaining about Giddings's management style and that some of her co-workers were making personal calls and not being as productive as plaintiff thought they should be. These are employee grievances about workplace matters, which are not matters of public concern. Havekost v. U.S. Dep't of Navy, 925 F.2d 316, 319 (9th Cir. 1991). There is one passing reference to a billing issue, which might suggest a matter of public concern, but this one passing reference is not a sufficient basis for the court to conclude that plaintiff was speaking about matters of public concern. Because plaintiff was not speaking about matters of public concern, her § 1983 free speech retaliation claim fails as a matter of law. Defendants are entitled to summary judgment on plaintiff's § 1983 free speech retaliation claim.

Defendants next move for summary judgment on plaintiff's § 1983 procedural due process claims. "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." Brewster, 149 F.3d at 982. Plaintiff contends that her procedural due process rights were violated 1) in connection with ASCHR's request for her personnel file, 2) when she was suspended, 3) when she was mandated to counseling, and 4) when she was terminated.

First, defendants are entitled to summary judgment on plaintiff's claim that her procedural due process rights were violated in connection with ASCHR's request for her personnel file.  City Code 3.90.020(A)(4)(b) requires that the City provide notice to an employee of a request for personnel records "within five working days after receipt of such a request."  ASCHR requested a copy of plaintiff's personnel file in a letter dated July 10, 2014, that was received by the City on July 11, 2014.[100]  Plaintiff signed a release allowing the City to send a copy of her personnel file to ASCHR on July 14, 2014.[101]  Thus, plaintiff had notice within five days of ASCHR requesting her personnel file.

As for plaintiff's claim that her due process rights were violated when she was suspended, "[p]ublic employees who may be dismissed only for cause possess a property interest in their continued employment."  <u>Walls v. Central Contra Costa Transit Authority</u>, 653 F.3d 963, 968 (9th Cir. 2011).  Plaintiff argues that Giddings took away her right to continued employment for two days.  She argues that this deprivation is sufficient to support a due process claim.

However, it is undisputed that plaintiff was paid for the two days she was suspended. Thus, in reality, plaintiff was suspended <u>with pay</u>, as opposed to being suspended <u>without pay</u>.  "Although the issue does not appear to have been decided by the Ninth Circuit, several other circuits . . . have held that being placed on paid administrative leave does not implicate

---

[100]Exhibit 1 at 21, Defendants' Motion for Summary Judgment, Docket No. 43.

[101]<u>Id.</u> at 18, 20.

a protected property interest for purposes of a procedural due process claim." Reiber v. City of Pullman, 918 F. Supp. 2d 1091, 1101 (E.D. Wash. 2013); see also, Stearns-Groseclose v. Chelan County Sheriff's Dep't, Case No. CV-04-0312-RHW, 2006 WL 195788, at *17 (E.D. Wash. Jan. 17, 2006) ("suspension with pay does not implicate the Due Process Clause of the Fourteenth Amendment"). Because plaintiff's due process rights were not implicated by her paid suspension, defendants are entitled to summary judgment on her § 1983 procedural due process claim based on her suspension.

Plaintiff also claims that her procedural due process rights were violated when Giddings mandated mental health counseling on January 15, 2016. Plaintiff argues that Giddings' decision to mandate counseling interfered with her property interest in her job because it interfered with the terms and conditions of her job and thus she should have been given a predeprivation hearing, which she contends she was not given. Plaintiff argues that her property interest in her public employment involves more than just pay. "The Fourteenth Amendment's due process guarantee applies to public employees who have a property interest in the terms or conditions of their employment." Ulrich v. City and County of San Francisco, 308 F.3d 968, 975 (9th Cir. 2002). Plaintiff argues that an employee has a right to "enjoy a workplace free from unequal conduct and free from discriminatory behavior"[102] and that the counseling mandate interfered with this right. Plaintiff acknowledges that demands from an employer that serve legitimate business interests would not interfere with

---

[102]Plaintiff's Opposition to Motion for Summary Judgment at 17, Docket No. 46.

an employee's property interest in the terms and conditions of her job, but she argues that there were no documented concerns about her mental health affecting her job duties prior to Giddings mandating counseling.  In other words, plaintiff argues that there was no legitimate business interest in mandating that she obtain mental health counseling and thus she was being treated unfairly when Giddings mandated counseling.

Assuming without deciding that plaintiff had a protected property interest in being treated fairly and that she was deprived of this interest, there was not a lack of process in connection with the mandate for counseling.  In order for predeprivation process to comport with due process "a plaintiff need only be accorded oral or written notice of the charges against h[er], an explanation of the employer's evidence, and an opportunity to present h[er] side of the story."  Brewster, 149 F.3d at 985 (citation omitted).  A predeprivation "hearing need not even approximate a trial-like proceeding; in fact, it may be very limited and still pass constitutional muster.  A predeprivation hearing serves only as an initial check against mistaken decisions. . . ."  Id. (citations omitted).  The January 15, 2016 referral memo set out the reasons counseling was being mandated and plaintiff was allowed to respond to the charges that day as evidenced by the handwritten notes she made on the referral memo.[103] This was sufficient to comport with due process.  Defendants are entitled to summary judgment on plaintiff's § 1983 due process claim based on allegations that her procedural due

---

[103]Exhibit A at 5, Plaintiff's Opposition to Motion for Summary Judgment, Docket No. 46.

process rights were violated in connection with the counseling mandate she received on January 15, 2016.

As for plaintiff's § 1983 procedural due process claim based on allegations that she was deprived of her property interest in her job when she was terminated, this claim fails as a matter of law because plaintiff resigned. At her deposition, plaintiff conceded that she had not been terminated.[104] To the extent that plaintiff is attempting to base this claim on a contention that she was constructively discharged, as is discussed below in detail, plaintiff's constructive discharge claims fail as a matter of law. Defendants are entitled to summary judgment on plaintiff's § 1983 procedural due process claim based on her "termination."

Finally, defendants move for summary judgment on plaintiff's constructive discharge claims. "In order to survive summary judgment on a constructive discharge claim, a plaintiff 'must show there are triable issues of fact as to whether a reasonable person in her position would have felt that she was forced to quit because of intolerable and discriminatory working conditions.'" Hardage v. CBS Broadcasting, Inc., 427 F.3d 1177, 1184 (9th Cir. 2005) (quoting Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465 (9th Cir. 1994)); see also, Poole v. City of Los Angeles, Case No. 01–56075, 2002 WL 1418295, at *2 (July 1, 2002) (citation omitted) ("[i]n order to prevail on a Section 1983 constructive discharge claim, a plaintiff must demonstrate that looking at the totality of circumstances, a reasonable person

---

[104]Bluel Deposition at 67:11-12, Exhibit 3, Defendants' Motion for Summary Judgment, Docket No. 43.

in [the employee's] position would have felt that [s]he was forced to quit because of intolerable and discriminatory working conditions").

In her complaint, plaintiff alleges that "Cottle constructively discharged her, when he refused to correct her employment file listing her as needing mental counseling, and when he took no corrective steps toward eliminating Archie Giddings['] hostile conduct toward her" and that he "constructively discharge[d] her, in retaliation for her exercise of Free Speech, and in violation of her Due Process rights."[105] She also alleges that Giddings "constructively [discharged] her, in retaliation for her exercise of Free Speech, and in violation of her Due Process rights."[106]

First, plaintiff's claim that Cottle and Giddings constructively discharged her in violation of her due process rights fails as a matter of law. Plaintiff "does not have a due process right to a hearing to determine whether h[er] due process rights themselves are triggered." Beard v. Baum, 796 P.2d 1344, 1350 (Alaska 1990). In Beard, the court noted that "[b]oth the timing of and the question to be decided at such a hearing defy sensible description. Beard's argument implies that whenever a state employee is considering resignation, he is entitled to a hearing on the question whether he is being harassed and if so whether there is just cause for the harassment." Id. at 1350 n.6. Defendants are entitled to summary judgment on plaintiff's claim that she was constructively discharged in violation

---

[105]Complaint for Damages at 6, ¶¶ 3.3 and 3.7, Docket No. 1.

[106]Id. at 6, ¶ 3.6.

of her due process rights.

As for plaintiff's constructive discharge claim based on allegations that she was retaliated against for exercising her right of free speech, this claim fails because her § 1983 free speech retaliation claim fails. Defendants are entitled to summary judgment on plaintiff's constructive discharge claim based on her § 1983 free speech retaliation claim.

As for her constructive discharge claim based on allegations that Cottle took no action to stop Giddings' hostile conduct toward her, the court has already determined that "plaintiff has not asserted a § 1983 hostile work environment claim."[107] Defendants are entitled to summary judgment on plaintiff's constructive discharge claim based on allegations of a hostile work environment.

As for plaintiff's claim that Cottle constructively discharged her because he refused to correct her employment file, "a single isolated incident is insufficient as a matter of law to support a finding of constructive discharge." Sanchez v. City of Santa Ana, 915 F.2d 424, 431 (9th Cir. 1990). At her deposition, plaintiff was asked what she meant by her allegation that she was constructively discharged because Cottle "refused to correct [her] employment file."[108] Plaintiff testified that

> [b]y removing . . . fraudulent documents out of my file, unlawful documents that mandate . . . counseling and the subsequent responses. Those should not be in my file. They're not legal

---

[107]Order re Motion to Dismiss at 10, Docket No. 34.

[108]Bluel Deposition at 70:20-23, Exhibit 3, Defendants' Motion for Summary Judgment, Docket No. 43.

documents.[109]

No reasonable jury would find that this incident was sufficient to a constitute constructive discharge. Defendants are entitled to summary judgment on this constructive discharge claim.

Finally, even if plaintiff were trying to assert that everything that happened to her combined resulted in her constructive discharge, such a constructive discharge claim would fail. There are no triable issues of material fact as to whether a reasonable person in plaintiff's position would have felt forced to quit because her working conditions were so intolerable. No reasonable person would find that plaintiff's working conditions were so intolerable that the only choice she had was to resign.

<u>Conclusion</u>

Defendants' motion for summary judgment is granted. The clerk of court shall enter judgment dismissing plaintiff's complaint with prejudice.

DATED at Anchorage, Alaska, this 23rd day of January, 2019.

/s/ H. Russel Holland
United States District Judge

---

[109]<u>Id.</u> at 70:25-71:5.